Bradbury, J.
The record discloses only two questions that we think are of sufficient importance to require consideration; both of which rise out of the testimony of Mrs. Jackson, plaintiff in error.
The action was brought by Mrs. Jackson to recover the value of personal services bestowed by her on John Ely, the testator, during the last two years of his life. The services began in May, 1889, and continued until his death in April, 1891. He had reached an extreme old age when the services began, and they were such as an old and failing-person might be expected to require. She moved into a house belonging- to him and as she 'contends, under a contract which provided merely for his board and the care of his room, and, perhaps, for his washing, but not for nursing and other personal attentions. No other person than herself and family was in or about the house, or in a situation to bestow on him such personal attention as -one of his age might ordinarily require,, and from the time she began the occupancy of his house and to board him and care for his room, whatever personal attention he received was given by her, except at a certain period or periods, when severe illness required the services of a nurse. From time to time, during the period she was there, she and the testator came to an agreement, and he paid her the sum agreed to be due her, taking on each of these occasions, twenty-two or twenty-three in all, an instrument signed by her all of which were alike in substance and very nearly alike in form, their phraseology differing, where at all, only in the most immaterial particulars, and in many *457 instances one is an exact copy of another, except as to date and amounts. The following is a sample:
“$4.50. Wooster, April 14, 1891.
This is to certify that I have this day settled with John Ely, and he has paid me all he owes me up to this date and I have no claims or demand against him of any kind whatsoever.
Mrs. H. Jackson.”
This is the last of the series, and was executed and delivered to the testator only three days before his death. A week later, and after the death of the testator, his executor, who it seems bore the same name, came to a settlement with Mrs. Jackson at which time the following instrument was executed by Mrs. Jackson and delivered to him:
“$23.00. Wooster, April 21, 1891.
This is to certify that I have this day settled with John Ely, and he has paid me all he owes me up to this 'date and I have no claims or demands against him of any kind whatsoever.
Mrs. H. Jackson.”
On the trial, this series of instruments were put in evidence by the executor in support of his contention. After the defendant had closed his evidence, .the plaintiff, Mrs. Jackson, was called as a witness in her own behalf, and over the objection of the defendant, founded on her incompetency as a witness, as well as on the inadmissibility of her testimony, she was permitted to testify touching the items that were included in the settlements, evidenced by these writings. Her attention was called to them one by one, until she had explained, substantially, all of them. Taking, for example, No. 5 of the series, which reads:
*458 “$15.50 (No. 5.) Wooster. Ohio, May 13,1890.
This is to certify that I have this day settled with John Ety, and he has paid me all he owed me up to this date, and I have no claims or demands against him of any kind whatsoever.
Mrs. Wm. Jackson.”
This was handed to her and she testified in regard to it.
“Q. Look at Exhibit 5.
A. That is for the same; boarding and meals; that is for the S3.00; a week’s boarding or some meals for grandpa and for his washing and ironing and mending and caring for his room; that is what that is for.
Q. Was it given for taking care of him?
A. No, sir, it was for his washing and mending and ironing and caring for his room and boarding.”
Whatever the general rule may be as to the reception of parol evidence to explain a mere receipt, it is not admissible, at least in Ohio, to vary the terms of a contract although, the contract should be included in an instrument which was also a receipt for money or property. Stone v. Vance et al., 6 Ohio, 246; Bird v. Hueston, 10 Ohio St., 418, 421, 430.
The line that divides receipts, open to parol explanation from written contracts to which nothing can be added to or taken from by parol evidence, has not been satisfactorily established, and eases can be found, which it is extremely difficult if not impossible to reconcile. That the above instrument (No. 5), is something more than a mere receipt seems quite clear from an inspection of its terms. It states that the parties had come to a settlement in respect to every claim or demand *459 that had before then existed between them. The sum of money stated in the margin, $15.50, manifestly is a part of the instrument, it represents the amount found to be due upon an adjustment of whatever items were then open between them. True, the instrument does not expressly state who was found to he the debtor, hut the unmistakable inference is that it was the testator; neither did he sign the paper; that, however, was the case with the instrument in States. Vance et al., 6 Ohio, 246. There, only the party that. received the property signed the instrument which was in the form of a receipt, but, nevertheless, it was held to embody the terms of a contract binding- on all parties. The fact that the party not signing, takes into his possession, control and custody, the instrument, establishes his assent to its terms.
A settlement is a contract between two parties by means of which they ascertain the state of the accounts between • them and strike a balance. Bouvier defines it in contracts as “An agreement by which two or more persons who have dealings together so far arrange their accounts as to ascertain the balance due from one to the other.” Volume 2, 634; 22 Am. & Eng. Ency. of Law, 488.
In Gass v. Ellison, 136 Mass., 503, the Supreme Court held a writing in the following terms to constitute a contract that could not he contradicted by parol. “Received of Mr. Elmer Ruggles a note on six months for fifty-one dollars, with interest as full payment, as per claim.” The court, speaking through Morton, C. J., says: “If this could be treated merely as a receipt, it might be open for plaintiff to show by parol that it was not intended as full payment and satisfaction of his claim against Ruggles. But it is more than a receipt. It is not *460 only an acknowledgment of the receipt of Ruggles’ note for fifty-one dollars, but is a statement of what the note was received for. It was received as full payment for the plaintiff’s claim against Ruggles. If the plaintiff should sue Ruggles, this contract would be a bar to the suit, because it is conclusive evidence of a settlement and satisfaction of the claim against him.” See also, Brown v. Cambridge, 3 Allen, (Mass.) 474.
If under our statutes Mrs. Jackson had been a competent witness in the action, the rule which permits the parol explanation o f receipts, may have authorized- her to testify that the amount found due on these settlements had been paid in part only, or not at all. If, however, this should be conceded, it would be no grounds to allow her to contradict or vary by parol, the declarations of those instruments as to the matters that had been included in the settlements which they evidenced. These instruments clearly and unequivocally import that every matter in difference between the parties to them, existing at the time they were respectively executed, had been comprehended in the settlements to which they relate; therefore, to permit her to testifj’, orally, that the demands on which her action was founded had not been included, was to permit her to contradict by parol the terms of the instrument. This was prejudicial error.
2. There was, however, another ground upon which her testimony on this subject should have been rejected. The adverse party was the representative of a deceased person, and on that ground she was excluded by section 5242, Revised Statutes.
She was testifying to matters that necessarily occurred in the lifetime of the testator, for it related to the matters that entered into a settle *461 ment had between herself and him. The fourth exception of section 5242, Revised Statutes, it is claimed, made her a competent' witness in respect to this testimony. That exception is in the following terms: “4. If a party offer evidence of conversations or admissions of the opposite party, the latter may testify to the same conversations or admissions.” Counsel contend that these instruments signed by Mrs. Jackson were admissions within the meaning of that term as it is used in the exception above cited, and, therefore, as those instruments,- being her admissions, were offered in evidence by the opposite party, she could testify respecting them. This contention has, at least, the merit of novelty. Doubtless the usual meaning attached to the word “admission” is broad enough to include written as well as oral admissions, so that the contention is not wholly groundless if it is novel. We think, however, that the subject-matter to which it relates and the connection in which it is found, indicate quite clearly that oral admissions, only, are intended. Every written contract, or statement in writing, is in one sense of the word, an admission made by each person who may sign it; but certainly, there must be many such, that may be introduced in evidence, which are not admissions within the exception, and it would be extremely difficult to distinguish those which would fall within from the others which fall without that exception, if parol evidence in such cases should be admitted at all. The only practicable rule on the subject, perhaps, open to adoption, would be that which would give to the living party the right to give his version of his written admissions, wherever they are introduced against him, if the writing should he such that it is open to parol explanation.
*462 We do not, however, think this to be a correct interpretation of the statute. The word admissions in this exception is employed in connection with the word conversations, and as supplementary to it. “Conversation” when employed to denote an interchange of sentiments, or a talking together, implies mutuality; the notion ordinarily conveyed by its use, is an oral discourse, or talk, in which two or more participated, while the word “admission” is applicable to a statement or declaration made by one person alone. The two words together seem to embrace every form of oral statement contemplated by this exception, while either, alone, might not be broad enough to do so. W ritten statements speak for themselves; the3r are composed of the very words chosen, or adopted by the person against whom they are offered in evidence, while the witness who attempts to repeat oral statements made by another is neither expected, or required bjT law, to give the statement with that precision; he need only give the substance of the conversation, or admission, and this, too, in language of his own choosing’. He may not have heard every word the other employed, or if he did, may not have fully comprehended their meaning, or if he at the time they were spoken, heard, and accurately understood the meaning, he may have forgotten some of them when called as a witness. While oral admissions are often valuable and satisfactory evidence, those who are conversant with such matters are keenly alive to the possibility that even the most conscientious witness may convey to the court or jury an impression of what was said quite different from that which the words of the party himself would have conveyed, had they been accurately repeated. Substantial reason, therefore, appear for discriminating between oral and • writ *463 ten statements of a party in this regard. Reasons that have no application to written statements, hut furnish strong grounds for permitting a party to give his version of his own oral discourse or admission that has been adduced against him. The court of common pleas therefore erred in holding Mrs. Jackson to have been a competent witness under the fourth exception of section 5242, to testify concerning the matters that were embraced in the settlements established by the instruments introduced in evidence against her. They were not admissions within the meaning of that word as used in that clause of the statute.
The circuit court committed no error in reversing the judgment of the court of common pleas»

Judgment affirmed.